AMERICAN INSURANCE COMPANY *v.* McGEHEE LIQUOR
COMPANY.

## Opinion delivered June 29, 1914.

1. JUDGMENT—ASSIGNMENT.—There is no statute authorizing an assignment of a judgment of the Supreme Court. (Page 488.)

2. JUDGMENTS—ASSIGNMENT—TITLE—ENFORCEMENT.—The rights of a judgment-creditor may be transferred to another, so as to carry the right to enforce the judgment, such assignment does not vest the legal title in the assignee, but he can enforce the judgment in the name of his assignor. (Page 488.)

3. JUDGMENTS—ASSIGNMENT—NEGOTIABILITIES.—A judgment is not negotiable and the assignee takes the assignment subject to all the equities between the parties to the judgment. (Page 488.)

4. JUDGMENTS—POWER OF COURT—PAYMENT—REMEDY.—The Supreme Court has power over its own judgment and process, and upon proof of the payment of the judgment, it will issue an order quashing and process erroneously issued thereon. (Page 489.)

5. JUDGMENT—ENFORCEMENT—JURISDICTION OF CHANCERY COURT.—The chancery court has jurisdiction to prevent the enforcement of a judgment of the Supreme Court, where the petitioner, against whom it was rendered, establishes grounds for equitable relief. (Page 490.)

Appeal from Pulaski Circuit Court; *John W. Blackwood,* Special Judge; motions denied.

*Cockrill & Armistead,* for petitioners.

*Kerby & Floyd,* for respondent.

PER CURIAM. This is a proceeding, instituted here, by two judgment-debtors, moving the court to quash an execution issued by the clerk of this court, on the ground that the judgment has been satisfied. They also ask that assignments of the judgment by the original judgment-creditor, and its assignee, be stricken from the files.

The American Insurance Company was doing business in Arkansas and gave bond, in accordance with the statute, signed by petitioner A. B. Poe and certain others.

The McGehee Liquor Company sustained a loss under a policy, which was adjusted, and the adjuster gave

a draft on the home office in another State, and the draft was endorsed by petitioner Poe and John B. Driver. Before the draft could be presented for collection, the insurance company became insolvent and passed into the hands of a receiver. The policy holder instituted an action against the company and the endorsers on the draft, and also against the sureties on the bond, and recovered judgment in the trial court against all of them. A supersedeas bond on appeal to this court was executed, and petitioners A. B. Poe and A. J. Graham signed the bond as sureties. When the case was heard here the judgment against the sureties on the original bond of the insurance company was reversed and the cause was dismissed as to them, but the judgment against the insurance company and Poe and Driver as endorsers of the draft was affirmed, and judgment was also rendered against Poe and Graham as sureties on the supersedeas bond. *American Ins. Co.* v. *McGehee Liquor Co.,* 93 Ark. 62.

The petitioners, Poe and Graham, allege in their petition or motion, now filed, that shortly after the affirmance of the judgment an execution was sued out by the judgment-creditor, but that said execution was paid, either by the American Insurance Company or by one of the sureties on the bond. In a supplemental petition it is alleged that the payment was made by W. B. Calhoun and that the judgment was assigned to him by the plaintiff, and that he assigned it to the German Investment Company. It is further alleged that one of the attorneys for the judgment-creditor, instead of having the execution returned satisfied, ''caused the same to be returned unsatisfied, and then proceeded to secure the said McGehee Liquor Company to assign said judgment to the corporation named, the German Investment Company, and that this was done * * * for the purpose of defrauding the petitioner'' and preventing him from enforcing his right of subrogation against the sureties for amounts that he had paid out for the insurance company on other

judgments. There are other allegations in the motion unnecessary to recite.

The response contains a general denial that the judgment has been satisfied, and contains also denials of the other allegations of the petition except the written assignment set forth therein. But it contains the statement also that, after the case had been appealed to this court and before the reversal of the judgment as to the sureties a writ of execution was issued from the Pulaski Circuit Court to the sheriff of Mississippi County against W. B. Calhoun, and that Calhoun, "to prevent the levy or sale of his property, satisfied said execution and the judgment was assigned to him, * * * as appears upon the margin of the record of said judgment." The records of this court show the assignment made by the plaintiff to the German Investment Company and the subsequent assignments.

It is argued in the first place that the assignments should be stricken from the files because there is no statutory authority to assign a judgment of this court, or to place an assignment upon the files of this court.

It is quite true that there is no statute authorizing an assignment of a judgment of this court, the only statute on the subject of assignment of judgments being one which relates to the assignment of causes of action as well as of judgments rendered thereon. Kirby's Digest, § 4457.

We have held that that statute has no reference to cases pending in this court. *St. Louis, I. M. & S. Ry. Co.* v. *Hambright,* 87 Ark. 242.

But aside from any statute on the subject, the rights of a judgment-creditor can be transferred to another so as to carry the right to enforce the judgment. Such assignment does not vest the legal title in the assignee, but he can enforce the judgment in the name of his assignor. 2 Black on Judgments, § § 940 and 948; 2 Freeman on Judgments, § 421.

A judgment is not negotiable, and, of course, the assignee takes the assignment subject to all the equities

between the parties to the judgment. 2 Freeman on Judgments, § 427.

It would not, therefore, be proper to strike out the assignments unless it is shown that the judgment has been satisfied.

There is, as before stated, an allegation in the petition to the effect that the judgment has, in fact, been paid and satisfied; but that is denied, and the record shows an assignment of the judgment by the judgment-plaintiff.

This court has power over its own process, and it would be proper for this court, upon proof of payment of the judgment, to make an order quashing any process erroneously issued thereon. That is not the exercise of original jurisdiction, but is merely the exercise of powers which courts inherently possess in the control of their own judgments and process: 17 Cyc., p. 1135.

That is as far, however, as this court can go, because it would be an exercise of original jurisdiction for this court to attempt to adjust the equities between the sureties on the bond of the defendant insurance company. If there exists any equities between the parties to be adjusted, a remedy must be sought in a court of original jurisdiction. The admission that Calhoun satisfied the execution issued from the Pulaski Circuit Court and caused the judgment to be assigned to him, and later, to the German Investment Company, raises a question of fact which relates only to the alleged equities between petitioners and Calhoun and those who claim under him, for the judgment of this court was not rendered against Calhoun. The effect of the admission is merely that Calhoun purchased an assignment of the judgment, and the question whether he had a right to do so is one for investigation in a court of original jurisdiction. It is alleged in the petition that the petitioners have instituted an action in the chancery court of Pulaski County against all of the parties claiming an interest in the judgment, and they are seeking to have the petitioners' rights of contribution enforced and the judgment stayed until that

can be done. The sheriff of Pulaski County, to whom the execution was delivered, is also made a party to that suit.

Now, it would be improper to undertake to decide, in advance, the questions involved in that case; but it is not improper to say at this time that, if a cause of action on behalf of the petitioners to prevent enforcement of this judgment against them be established, the chancery court, acting *in personam,* has the power to prevent the enforcement of the judgment, even though it be a judgment of this court. The court can not coerce the officers of this court, but when it acquires jurisdiction of the persons of those who are parties to the judgment, it has the power to prevent them from taking any steps toward the enforcement of the judgment. This, of course, is dependent upon there being a statement of grounds for equitable relief.

The motion of petitioners is, therefore, overruled without prejudice to their rights to seek relief in a court of competent jurisdiction.