OUACHITA RAILROAD, INC. *v.*
CIRCUIT COURT of UNION COUNTY, Arkansas,
Second Division

04-734                                    206 S.W.3d 811

Supreme Court of Arkansas
Opinion delivered April 7, 2005

*Shackleford, Phillips, Wineland & Ratcliff, P.A.*, by: *Teresa Wineland* and *Casey Castleberry*, for petitioner.

*John D. Lightfoot, P.L.L.C.*, by: *John D. Lightfoot*, for respondent.

R OBERT L. BROWN, Justice. The petitioner, Ouachita Railroad, Inc., petitions this court for a writ of prohibition against the respondent, the Circuit Court of Union County, Second Division. Ouachita Railroad seeks the writ on the basis that the circuit court is wholly without jurisdiction to entertain a counterclaim against it for abandonment and adverse possession in its suit for ejectment against Donna and Steve Harbour (the Harbours). It asserts that the Harbours' counterclaim is within the exclusive jurisdiction of a federal board, the Surface Transportation Board (STB). The Harbours counterpetition for a writ of prohibition on grounds that Ouachita Railroad's ejectment action also falls within the sole

jurisdiction of the STB. We grant Ouachita Railroad's petition for writ of prohibition and deny the Harbours' counterpetition.

On February 24, 1999, Ouachita Railroad filed it complaint for ejectment against the Harbours in circuit court. In its complaint, the railroad stated that it had obtained a parcel of land through a series of deeds from Chicago, Rock Island and Pacific Railroad Co., and that it had been paying, and was continuing to pay, property taxes on the land. The property at issue, as identified in the complaint, consists of a strip of land that is approximately fifty feet wide and runs from Main Street in El Dorado to a point approximately five-hundred feet north of Main Street. The complaint alleged that the Harbours had wrongfully taken possession of the land and had removed the railroad's tracks from the land, thereby damaging Ouachita Railroad by depriving it of its opportunity to use the property. The complaint prayed for the Harbours to be ejected and for damages, as well as for a writ of possession.

The Harbours answered Ouachita Railroad's complaint and counterclaimed, asserting adverse possession and abandonment against the railroad. They claimed that the railroad's right-of-way had been lawfully abandoned without any substantial possession by it or its predecessors in title for a period of more than twenty years. In addition, they claimed that title should be quieted in them due to their open, notorious, and continuous possession of the tract.

Ouachita Railroad answered the counterclaim and denied the allegations. It further asserted that the counterclaim failed to set forth facts upon which relief could be granted. The railroad also alleged that the circuit court had no jurisdiction to hear the Harbours' equitable quiet-title claim for abandonment and adverse possession, and that, therefore, the claim should be dismissed or transferred to the chancery court.[1]

Ouachita Railroad then moved for summary judgment. It its motion, it asserted that the STB had exclusive jurisdiction over the abandonment or discontinuation of the use of the right-of-way, and that the STB's authority to regulate the matter preempted all

---

[1] Ouachita's answer to the Harbours' counterclaim was filed in 1999 prior to the effective date of Amendment 80 to the Arkansas Constitution, which merged courts of law and equity.

state law relating to it.[2] It claimed that because there was no genuine issue as to any material fact, it was entitled to judgment as a matter of law.

On March 30, 2001, the chancery court issued a letter opinion in the matter. In it, the court stated that the authorities cited by Ouachita Railroad supported the railroad's preemption argument and that "it is the conclusion of this Court that whether this property has been abandoned by plaintiff must be resolved by the Surface Transportation Board." The court then ruled that because the filing fee for any petition before the STB was $14,500, it would be inequitable to require the Harbours to spend more than the value of the land at issue to find out whether the land had been abandoned by the railroad. The court concluded:

> . . . Therefore, it is the conclusion of this Court that the Motion for Summary Judgment by plaintiff should be denied but a finding by this Court made that the exclusive source of determining whether the land has been abandoned is the Surface Transportation Board. An Order should be entered requesting that governmental agency to address the abandonment issue and that the filing fee be waived.

On April 12, 2001, the court entered its order in which it agreed "that the issue of whether the Plaintiff has abandoned the property in question in this lawsuit is an issue which must be resolved by the Surface Transportation Board." The court stayed the matter and referred the abandonment issue to the STB for resolution. It further directed counsel for the Harbours to file the necessary request with the STB to bring the abandonment issue before it and directed counsel to request the STB to waive all filing fees in the matter because the matter was being referred by a state governmental entity in accord with 49 C.F.R. § 1002.2(e)(1). The court retained jurisdiction to address the state law claims after the STB made its final determination on whether Ouachita Railroad had abandoned the property.

On April 25, 2002, Ouachita Railroad filed a renewed and supplemental motion for summary judgment, in which it claimed that the Harbours made the request as directed by the court, but that the STB denied the Harbours' request to waive the filing fee.

---

[2] The motion further states that the matter was transferred to chancery court because of the equitable nature of the Harbours' counterclaim.

The railroad moved that since the court had already determined that the STB had exclusive jurisdiction over the Harbours' counterclaim, it was appropriate for the court now to grant its motion for summary judgment.

On May 9, 2003, the circuit court issued a letter opinion.[3] In this opinion, the circuit court wrote that a hearing had been held on the railroad's renewed and supplemental motion for summary judgment. The court found:

> It is the conclusion of this Court that, although the issue of abandonment is not within the jurisdiction of this Court, the equitable defenses raised by defendants regarding the action in ejectment are within the jurisdiction of this Court. Therefore, the motion for summary judgment by plaintiff should be denied.

A decree memorializing the circuit court's letter opinion was entered subsequently.

On June 30, 2004, Ouachita Railroad petitioned this court for a writ of prohibition on grounds that the circuit court was wholly without subject-matter jurisdiction to hear the Harbours' counterclaim of abandonment or adverse possession. The Harbours responded that the circuit court had "maintained that certain equitable and affirmative defenses remained available as pertains to possession and usage of any such right-of-way."

Ouachita Railroad first contends that it is entitled to a writ of prohibition against the circuit court, because the STB has exclusive jurisdiction over the Harbours' counterclaim of abandonment and adverse possession. It contends that 49 U.S.C. § 10501(b) grants the STB exclusive jurisdiction over the abandonment and discontinuance of all rail lines where Ouachita Railroad has record title. It claims that the STB's jurisdiction preempts any state court jurisdiction to adjudicate an action involving the cessation of services on a rail line, and it submits that under the ICC Termination Act of 1995, the STB's determination of abandonment is plenary, pervasive. and exclusive of state law, preempting all state laws relating to the subject matter. It further asserts that state law claims can only be brought after an STB-authorized abandonment, and as such, the circuit court is precluded by federal law from

---

[3] Section 6 of Amendment 80 provides that all trial courts will be circuit courts. The Amendment was effective July 1, 2001.

hearing or deciding the Harbours' abandonment claim. Finally, it maintains that the Harbours' quiet-title action is likewise pre-empted, because any determination by the circuit court that the Harbours had acquired title by adverse possession would effectively equate to a permanent and total cessation of railroad service over the right-of-way, and, again, only the STB has the authority to discontinue rail service.

The Harbours first respond that the petition for writ of prohibition is moot in that the circuit court has acknowledged the STB's exclusive jurisdiction over abandonment, and any appellate-court finding in that regard would have no practical legal effect upon the existing legal controversy. The Harbours further urge that there are proper appellate remedies remaining available to the railroad after a full adjudication of the issues on the merits, and, accordingly, prohibition should not be substituted for the normal remedy of appeal. Finally, the Harbours urge that their counter-petition for a writ of prohibition should be granted regarding Ouachita Railroad's ejectment complaint. They contend that should the STB have exclusive jurisdiction over their claims, then the circuit court should likewise be barred from reviewing or considering those issues set forth in the railroad's complaint.

This court has previously set forth the requirements for obtaining a writ of prohibition:

> A writ of prohibition is an extraordinary writ. *McGlothlin v. Kemp,* 314 Ark. 495, 863 S.W.2d 313 (1993). We have stated that it is only appropriate when the lower court is wholly without jurisdiction. *Id.* Jurisdiction is the power or authority of the court to act. *Mark Twain Life Ins. Corp. v. Cory,* 283 Ark. 55, 670 S.W.2d 809 (1984). The jurisdiction of the circuit court to hear civil cases absent a provision for exclusive jurisdiction of a particular matter in another venue is well settled. *Commission of Judicial Discipline and Disability v. Digby,* 303 Ark. 24, 792 S.W.2d 594 (1990). We have consistently denied writs of prohibition where the lower court acted within its jurisdiction. *See, e.g., Arkansas Highway Comm'n v. Munson,* 295 Ark. 447, 749 S.W.2d 317 (1988) (chancery court has power to enjoin the enforcement of a void order); *Commission of Judicial Discipline and Disability v. Digby, supra* (circuit court has authority to entertain a declaratory judgment action but not action for costs and expenses).

*West Memphis Sch. Dist. No. 4 v. Circuit Court of Crittenden County,* 316 Ark. 290, 293, 871 S.W.2d 368, 370 (1994). The writ is

appropriate only when there is no other remedy, such as an appeal, available. *See Manila Sch. Dist. No. 15 v. Wagner,* 357 Ark. 20, 159 S.W.3d 285 (2004). Prohibition is a proper remedy when the jurisdiction of the trial court depends upon a legal matter rather than a factual question. *See id.*

The Harbours' first answer to Ouachita Railroad's petition is that because the circuit court acknowledged that the STB had exclusive jurisdiction over the counterclaim, and because the railroad has the option of appeal after a determination on the merits, the instant petition is moot. They are mistaken.

▓ While the circuit court did find that the STB had jurisdiction over the abandonment counterclaim, the circuit court denied the railroad's motion for summary judgment on the counterclaim and retained jurisdiction over it. Specifically, it retained jurisdiction over "the equitable defenses raised by defendants[.]" As stated above, a writ of prohibition is appropriate where a circuit court is *wholly* without jurisdiction. Thus, if determined by this court that the STB does have exclusive jurisdiction over the counterclaim and "the equitable defenses," the circuit court would be wholly without jurisdiction, and the railroad would be entitled to its writ.

▓▓ This court has previously found that a writ of prohibition is a proper remedy for lack of subject-matter jurisdiction in the trial court even when a petitioner is not entitled to an appeal from a denial of a motion for summary judgment. *See Ramirez v. White County Circuit Court,* 343 Ark. 372, 377, 38 S.W.3d 298, 301 (2001) ("So, if there is no jurisdiction, the only way petitioners can obtain review by this court is by way of a petition for a writ of prohibition. Therefore, a petition for writ of prohibition is a proper method to obtain review of jurisdiction by this court."). In the case before us, the instant petition follows the denial of a motion for summary judgment but raises the issue of lack of subject-matter jurisdiction in the circuit court. Accordingly, we will hear it. *See, e.g., St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County, Western Div.,* 348 Ark. 197, 73 3d 584 (2002).

▓ In *English v. General Elec. Co.,* 496 U.S. 72 (1990), the United States Supreme Court set forth three scenarios in which federal preemption may occur: (1) where Congress has made its intent known explicitly through statutory language; (2) where

state law regulates conduct in a field that Congress intended the Federal Government to occupy exclusively; or (3) where state law actually conflicts with federal law. At issue in the instant case is 49 U.S.C. § 10501 (2000), which sets forth the general jurisdiction of the Surface Transportation Board. Subsection (b) of that section provides in pertinent part:

> (b) The jurisdiction of the Board over —
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b) (2000).

The question before this court is whether the Harbours' counterclaim against the railroad for abandonment and adverse possession of the railroad's right-of-way is exclusively within the jurisdiction of the STB. We conclude that it is. Section 10501(b) clearly provides that the STB's jurisdiction over the abandonment of tracks is exclusive and preempts any remedies available under state law. This court has previously recognized the broad language of § 10501(b), as it related to the discontinuation of railroad agency stations and its preemptive effect. *See 25 Residents v. Arkansas Highway & Transp. Comm'n*, 330 Ark. 396, 401, 954 S.W.2d 242, 244 (1997) ("Given the broad language of the act itself, its statutory framework, and considering the recent decisions interpreting the act, we believe it is clear that Congress intended to preempt the states' authority to engage in economic regulation of rail carriers.").

The Unites States Supreme Court has noted the plenary preemptive authority of the STB's predecessor, the Interstate

Commerce Commission (ICC) in *Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311 (1981):[4]

> The Interstate Commerce Commission has been endowed by Congress with broad power to regulate a carrier's permanent or temporary cessation of service over lines used for interstate commerce. ... In addition, and most relevant here, the Act endows the Commission with broad authority over abandonments, or permanent cessations of service.
>
> . . . .
>
> . . . Consequently, we have in the past concluded that the authority of the Commission to regulate abandonments is exclusive. The Commission's authority over abandonments is also plenary.
>
> . . . .
>
> In sum, the construction of the applicable federal law is straightforward and unambiguous. Congress granted to the Commission plenary authority to regulate, in the interest of interstate commerce, rail carriers' cessations of service on their lines. And at least as to abandonments, this authority is exclusive.

450 U.S. at 319-23 (internal citations omitted). *See also Cedarapids, Inc. v. Chicago, Central & Pacific R.R. Co.*, 265 F. Supp. 2d 1005 (N.D. Iowa 2003) (holding that to the extent that Cedarapids' state-law claim sought to force CC&P to abandon the track in question, such claims were preempted by the Interstate Commerce Commission Termination Act); *City of Seattle v. Burlington Northern R.R. Co.*, 105 Wash. App. 832, 836, 22 P.3d 260, 262 (2001) (stating that language of 49 U.S.C. § 10501 is "clear, broad, and unqualified" and "grants the STB jurisdiction over the listed activities"); *Trustees of the Diocese of Vermont v. State*, 145 Vt. 510, 496 A.2d 151 (1985) (holding that where no abandonment proceedings before the ICC had been commenced, nor any ICC authorization for the Vermont Railway to discontinue service, a declaratory-judgment action in state court that easement granted for railroad purposes had been abandoned interfered with ICC's power to determine abandonment).

---

[4] The STB was established in 1996 and replaced the ICC. *See* 49 U.S.C. §§ 701-702 (2000).

While the *Chicago & North Western Transp. Co.* decision dealt with the ICC, 49 U.S.C. §§ 701-702 (2000) created the current STB and enabled it to perform all functions that were the functions of the ICC prior to the enactment of the ICC Termination Act of 1995. *See* 49 U.S.C. §§ 701-702 (2000). Accordingly, just as the ICC had exclusive jurisdiction over a railroad's abandonment of its lines, so does the STB since the passage of the ICC Termination Act of 1995. *See Howard v. Surface Transp. Bd.*, 389 F.3d 259 (1st Cir. 2004) (stating that generally, the STB's authority over abandonment of rail lines is exclusive and plenary, citing *Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.*, *supra*).

With respect to the Harbours' counterclaim for adverse possession of the property, and any "equitable defenses" that seek to establish any right to usage of the land by the Harbours, we conclude that these matters too would be precluded under 49 U.S.C. § 10501. As already noted, the ICC's, and now STB's, jurisdiction over the "construction, acquisition, operation, abandonment, or discontinuance of . . . tracks" is exclusive. 49 U.S.C. § 10501(b)(2) (2000). Were the circuit court to quiet title over the land in favor of the Harbours based on their counterclaim of adverse possession or to acknowledge any right to the land by the Harbours, this would necessarily result in the acquisition of the right-of-way by the Harbours and in the discontinuation of the use of the same by the railroad. Such a determination clearly falls within the exclusive jurisdiction of the STB, as demonstrated by the clear language of the statute as well as the case law cited above.

One appellate court has even acknowledged that "a long-standing de facto abandonment is insufficient to defeat the jurisdiction of the STB to determine whether such an abandonment is within the public convenience and necessity." *Eldridge v. City of Greenwood*, 331 S.C. 398, 408, 503 S.E.2d 191, 196 (1998). Because any determination by the circuit court on the matter of title or any right to the land would interfere with the STB's jurisdiction as provided for in the statute, we hold that the circuit court is wholly without jurisdiction to determine the abandonment and adverse possession claims but also any equitable defenses asserted by the Harbours that seek to bestow upon them any right to the use of the land. It is the STB that has exclusive jurisdiction over such matters. Accordingly, the circuit court is wholly without

jurisdiction to make any determination regarding these matters, and the writ of prohibition should issue.

        The Harbours also counterpetition for a writ of prohibition to prohibit the circuit court from hearing the railroad's complaint for ejectment, but they have failed to cite this court to any authority for such a proposition other than 49 U.S.C. § 10501(b). This court has been resolute in holding that it will not consider an issue raised which is not supported by convincing argument or citation to authority. *See, e.g., Whitley v. Cranford*, 354 Ark. 253, 119 S.W.3d 28 (2003); *Utley v. City of Dover*, 352 Ark. 212, 101 S.W.3d 191 (2003). In addition, we note that § 10501(b) does not list ejectment as a matter that is within the jurisdiction of the STB. Because no abandonment or cessation of use of the land by the railroad has been decided by the STB, title to the land remains in Ouachita Railroad, and it may proceed with its claim for ejectment in state court.

        Ouachita Railroad's petition for a writ of prohibition is granted. The counterpetition for a writ of prohibition is denied.