Preston **MARLEY** Plaintiff

v.

**CRAWFORD COUNTY, ARKANSAS;** Bob Ross, individually and in his official capacity as the Crawford County Sheriff; Crawford County Sheriff's Department; and Deputies Shawn N. Firestine, Donnie Threet, and Andy Jones, individually and in their official capacities as Crawford County Sheriff's Deputies Defendants

No. 04–2042.

United States District Court, W.D. Arkansas, Ft. Smith Division.

July 12, 2005.

Charles D. Hancock, Edward G. Adcock, Little Rock, AR, for Plaintiff.

Ralph C. Ohm, Burt Newell, Hot Springs, AR, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

DAWSON, District Judge.

There comes on for consideration Defendants' Motion for Summary Judgment (Doc. 21) on Plaintiff's excessive force claim arising under 42 U.S.C. § 1983 and on Plaintiff's tort claims based on Arkan-

sas state law. Defendants contend all claims should be dismissed and further that Deputies Firestine, Threet, and Jones are entitled to qualified immunity as Plaintiff's constitutional rights were not violated during the events surrounding his arrest. For the reasons that follow, we determine Defendants' motion (Doc. 21) is GRANTED in part and DENIED in part.

## A. Background

This case arises out of events surrounding the arrest of Plaintiff on the evening of June 18, 2001 in Crawford County, Arkansas. At 10:55 P.M., Separate Defendant Shawn Firestine was called to the scene of a car wreck in Crawford County, Arkansas, involving a small, dark colored truck that had fled the scene. Deputy Firestine observed a truck fitting that description along with two individuals at a nearby residence. As Firestine approached, one of the individuals, the Plaintiff in this action, went behind the residence, and the other individual moved to the front porch. Deputy Firestine, who was in uniform, used his flashlight to follow the Plaintiff.

Firestine observed Plaintiff moving along a tree line and ordered Plaintiff to stop, or that he would shoot him. The Plaintiff refused to stop and told Firestine that he would have to catch him. Firestine then gave chase, Plaintiff fell, and a physical struggle ensued. At some point, Firestine sprayed pepper spray at Plaintiff. Plaintiff again fled, and Firestine chased Plaintiff into the bushes and trees. Another physical struggle ensued which caused injuries to Plaintiff's head. Ruth and Billie Thompson were present at the scene and witnessed the struggle between Deputy Firestine and the Plaintiff.

Defendant Firestine contends Plaintiff sustained the head injuries while fleeing when he made contact with various tree branches and limbs. Plaintiff argues he sustained the head injuries as a result of the events which occurred in the physical struggle in the bushes and trees. Deputy Firestine alleges he attempted to strike Plaintiff with his flashlight in the "meaty" part of his shoulder in order to subdue him. Firestine admitted in his deposition that it was possible that in the struggle, he may have inadvertently struck Plaintiff's head with the flashlight. (Doc. 28; Firestine Dep. p. 80.). Plaintiff contends Deputy Firestine struck him in the head causing him to fall and again in the ensuing physical struggle. (Doc. 28; Ex. 2, pp. 9 & 25; Ex. 3, pp. 22, 24, 28–29).

Sergeant Steve Burkes, Arkansas State Police Trooper Dale Howard and Deputies Donnie Threet and Andy Jones arrived on the scene soon after and placed handcuffs on Plaintiff. Blood was on both Deputy Firestine and Plaintiff, and both received emergency room care. Plaintiff's injuries were treated and he was jailed at 3:10 A.M. on June 19, 2001 and released on bond at 10:10 A.M. that day.

## B. Discussion

In their Motion for Summary Judgment (Doc. 21), Defendants ask the Court to grant summary judgment for all parties. In addition, they contend Deputies Firestine, Threet, and Jones are entitled to qualified immunity.

In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the non-moving party. *See Rabushka v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997). The moving party bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Qualified immunity shields defendants "[f]rom liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Saucier,* the Supreme Court clarified the two-step qualified immunity inquiry. The first step is for the court to determine whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *See Saucier,* 121 S.Ct. at 2156. The next sequential step is to determine whether the right was clearly established. *See id.* The inquiry in determining whether a right is clearly established is whether the officer could have reasonably believed that his conduct was lawful, even if erroneous in this belief. *See id.* at 2158.

### 1. Official Capacity Claims

■ As Defendants point out in their brief, the claims against Sheriff Ross and Deputies Firestine, Threet, and Jones in their official capacities are essentially claims against Crawford County. *See Liebe v. Norton,* 157 F.3d 574, 578–79 (8th Cir.1998). Therefore, Plaintiff's official-capacity claims against Sheriff Ross and Deputies Firestine, Threet and Jones are DISMISSED as redundant.

### 2. Sheriff Bob Ross in his Individual Capacity

■ Sheriff Ross may be held individually liable under Section 1983 if he directly participated in the alleged use of excessive force or if his failure to properly supervise or train the offending deputies caused the use of excessive force. *See Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir.1996). Under the failure to supervise theory, the Eighth Circuit Court of Appeals has recognized that a supervisor commits a constitutional violation if he or she directly participates in a constitutional violation or if his or her failure to train the offending employee caused a deprivation of constitutional rights. *See Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir.1996) (citing *Tilson v. Forrest City Police Dep't,* 28 F.3d 802 (8th Cir.1994)).[1] This test requires a plaintiff also to prove that the supervising official was "deliberately indifferent to or tacitly authorized the offending acts." *Andrews,* 98 F.3d at 1078. In order to demonstrate "deliberate indifference," the plaintiff must show "the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *See id.*

While it generally has been held that "a single incident does not provide a supervisor with notice of deficient training or supervision," courts are willing to adjust their analyses depending on the gravity of the incident inflicted. *Wever v. Lincoln County,* 388 F.3d 601, 607 (8th Cir.2004). This "flexible calculus" looks to the "seriousness of the incident and its likelihood of discovery." *Id.*

---

**1.** Courts also recognize a second method for determining a constitutional violation by police supervisors, however, it involves the investigation of prior complaints of unconstitutional conduct. Under that test, supervising police officials act unconstitutionally in "failing to adequately receive, investigate, or act upon complaints of … [police misconduct] … if they: 1/ [r]eceived notice of a pattern of unconstitutional acts committed by subordinates; 2/ [d]emonstrated deliberate indifference to or tacit authorization of the offensive acts; 3/ [f]ailed to take sufficient remedial acts; and 4/ [t]hat such failure proximately caused injury." *See Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir.1996). Since Plaintiff made no allegation of Sheriff Ross' failure to respond to actual complaints of unconstitutional conduct, the Court has not discussed it here.

■ Plaintiff contends Sheriff Ross exhibited deliberate indifference by failing to have a formal review process in place following incidents involving use of force. (Doc. 30 p. 3.) Plaintiff cites no case or precedent to reflect that the lack of such a review procedure constitutes deliberate indifference. Nor does the Court agree that the lack of a such a procedure meets this standard, as any citizen complaints would be sufficient to raise the issue of the suitability of sheriff's office employees.

The Court notes Plaintiff makes no allegations of prior citizen complaints involving Deputy Firestine and no allegations of unfitness for duty. Therefore, we cannot say Sheriff Ross had notice of any violent propensities or disqualifying characteristics on the part of Firestine. Accordingly, the Court concludes that Plaintiff's claims against Sheriff Ross in his individual capacity are subject to summary judgment, as there is no evidence that Sheriff Ross was directly involved in the alleged use of excessive force, that any failure to train or supervise on his part caused it, or that he acted with deliberate indifference in supervising and training Deputy Firestine.

### 3. Separate Defendant Shawn Firestine in His Individual Capacity

■ There is no doubt that striking a detainee in the head with a baton or flashlight when he is not resisting constitutes excessive force. However, there remains a factual dispute as to whether Plaintiff was subdued (i.e., not resisting) at the time Deputy Firestine inflicted blows to Plaintiff using his flashlight and as to the location of the blows upon Plaintiff's body. Two witnesses, Ruth and Billie Thompson testified that they observed Deputy Firestine strike Plaintiff in the head while he was fleeing and again while he was subdued. (Doc. 28, Ex. 2 & 3). Deputy Firestine contends that he only struck Plaintiff twice with his flashlight on his shoulder in an attempt to subdue him. (Doc. 28,

Ex. 5). As such testimony creates a material issue of fact, Deputy Firestine is not entitled to qualified immunity for the alleged use of excessive force, as Plaintiff's right to be free of excessive force was clearly established. Deputy Firestine could not have reasonably believed that hitting Plaintiff while subdued and not resisting was lawful if, in fact, that is what happened. *See Saucier v. Katz,* 533 U.S. 194, 204–07, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (qualified immunity does not shield conduct which violates clearly established rights; inquiry in determining whether a right is clearly established is whether officer could have reasonably, but erroneously, believed that his conduct was lawful). As a genuine issue of material fact exists, Defendants' summary judgment motion as to the excessive force claim against Deputy Firestine in his individual capacity is DENIED.

### 4. Separate Defendants Donnie Threet and Andy Jones in Their Individual Capacities

■ There is no allegation in the complaint that Deputies Threet and Jones participated in any conduct involving the Plaintiff other than arriving on the scene and handcuffing Plaintiff. Based on this conduct, there is no constitutional violation, Deputies Threet and Jones are entitled to qualified immunity, and summary judgment is GRANTED as to Separate Defendants Threet and Jones.

### 5. Crawford County

■ Under Section 1983, a municipality can be held liable for the unconstitutional acts of its employees if a municipal policy or custom was the moving force behind the constitutional violation. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As noted above, Plaintiff contends

Deputy Firestine's actions on June 18, 2001, reflect a policy or custom on the part of Crawford County, Arkansas. Further, Plaintiff argues that Crawford County is liable as the alleged policy led to the alleged violation of Plaintiff's constitutional rights.

In our case, there is a question whether Crawford County has a policy or custom in place that authorizes the use of a flashlight or baton in the manner Deputy Firestine stated he was utilizing it. *See Ware v. Jackson County,* 150 F.3d 873, 880 (8th Cir.1998) (finding a "policy" is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official final authority on such matters, and a "custom" is a continuing widespread, persistent pattern of unconstitutional misconduct by the governmental employees). Sheriff Ross stated that hitting a suspect on the arm during a physical struggle would be consistent with the policy of Crawford County, Arkansas. (Doc. 28 Ex. 4; Ross Dep. p. 28.) Plaintiff offers no proof, however, of the official adoption of such procedures by the county other than Sheriff Ross' statement.

■ In view of the factual dispute presented by the disputed existence of an official policy or custom regarding the use of police batons or flashlights during physical confrontations, and based on the factual dispute as to whether Plaintiff was subdued at the time he allegedly sustained a blow or blows to the head, we determine Plaintiff has sufficiently offered evidence of an alleged constitutional violation to survive summary judgment as to his claim against Crawford County. Although Plaintiff may not survive a motion for directed verdict at the end of his evidence presented at trial, summary judgment as to Defendant Crawford County, Arkansas, is DENIED at this time.

### 6. State-law Battery Claim

■ Plaintiff's complaint also asserts a tort claim against Defendants pursuant to Arkansas law. (Doc. 6; Compl. ¶ 17.) Defendants interpret this claim to be one involving negligence and argue that they are entitled to summary judgment on this claim. While it is true that Arkansas counties and political subdivisions are immune from tort recovery based on the acts of their agents and employees, *see* Ark. Code Ann. § 21–9–301, Arkansas law does not enjoin tort recovery for intentional torts. *See West Memphis Sch. Dist. v. Circuit Court of Crittenden County,* 316 Ark. 290, 871 S.W.2d 368, 371 (1994). Thus, to the extent Plaintiff's complaint alleges battery, an intentional tort, summary judgment is DENIED as factual issues remain to be determined.

### C. Conclusion

In conclusion, the Court finds Plaintiff's official-capacity claims against Defendants Ross, Firestine, Threet, and Jones are DISMISSED WITH PREJUDICE. Summary judgment is GRANTED as to Plaintiff's individual-capacity claims against Defendants Threet and Jones as well as Plaintiff's individual-capacity claim against Sheriff Ross. Summary judgment is DENIED as to Plaintiff's claims against Deputy Firestine in his individual capacity and Crawford County, and as to his state law battery claim to the extent it is alleged in the Complaint.